IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORY COTTINGHAM | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-2793 |
| | : | |
| TUTOR PERINI BUILDING CORP. et al. | : | |

O'NEILL, J.                                                                                                                                             February 21, 2017

**MEMORANDUM**

        Plaintiff Cory Cottingham, an employee of a subcontractor on a construction site, brings claims against Tutor Perini Building Corporation and Keating Building Company[1] for negligence based on an accident in which plaintiff's leg and foot were crushed by falling cement panels. Dkt. No. 23 (Sec. Am. Compl.). Defendants move for summary judgment on plaintiff's claim, submitting several briefs in support of their motion. Dkt. Nos. 66 (Mot. and Mem.), 69 (Reply) and 71 (Sur-Reply). They argue, among other things, that defendant Tutor Perini Building Corporation is entitled to Worker's Compensation Act immunity as plaintiff's statutory employer, and they present evidence to this effect. Plaintiff, in his responses, Dkt. Nos. 68 (Response) and 70 (Reply), contends that Tutor Perini Building Corporation is not entitled to this immunity because it did not control or occupy the construction site. However, plaintiff does not present sufficient evidence to support this contention. Therefore, I will grant defendants' motion for summary judgment.

---

[1] Plaintiff sues defendant Keating Building Company under the name Keating Building Corporation. Pennsylvania law provides that a plaintiff can bring a claim against a corporation or other similar entity in "any name, real or fictitious, under which [it] was organized, or conducts business, whether or not such name has been filed or registered." Pa. R. Civ. P. 2176 and 2177.

**BACKGROUND**

This personal injury case arises out of an accident that occurred during the Chestnut Street Tower construction project at 31st and Chestnut Streets in Philadelphia.  Plaintiff worked for Carson Concrete Corporation, a subcontractor of defendant Tutor Perini Building Corporation.  Dkt. No. 66, Ex. A (Cottingham Dep.) at 12:3–16.  According to the subcontract with Tutor Perini Building Corporation, Carson was to lay the concrete foundation and superstructure of the building.  Dkt. No. 66, Exs. H-1 and H-2 (Subcontract between Tutor Perini Building Corp. and Carson Concrete Corp., Jan. 11, 2013).

## I. The Accident

On July 10, 2013, plaintiff was working with a coworker to hoist cement blocks. Cottingham Dep. at 151:6–15.  They were using rigging equipment to secure stacks of panels to the crane's hook with four slings that they secured to the bottom panel in the stack at four points with pins.  Cottingham Dep. at 153:11–154:6; Dkt. No. 68, Ex. N (Bradfield Safety Consultants Report, Aug. 12, 2016) at 2.  In order to have a secure lift, the two workers must secure their pins in the same block, each on his respective side of the stack.  Dkt. No. 68, Ex. N at 3.

When the load was about a foot off the ground, it came apart and the cement panels fell on plaintiff's legs.  Cottingham Dep. at 187:12–190:22.  Dkt. No. 66, Ex. S (McGilligan Dep.) at 68:1–74:12.  Both parties agree that the men had placed the pins at different levels of the stack, though they disagree about which worker misplaced his pins.  Dkt. No. 68, Ex. N at p. 1 (Pl.'s Expert Report) (concluding plaintiff's coworker misplaced his pins); Dkt. No 66, Ex. U (Def.'s Expert Report, Sala) at 18 (concluding plaintiff misplaced his pins), Ex. T (Def.'s Expert Report, Riggs) at 5–6 (same).

Plaintiff's expert opined that a number of safety precautions could have prevented the accident, including a job safety analysis before the operation that would have revealed the need to use either a basket hitch or a combination of a strap along with the lifting pins to secure the load from unanticipated movement.  Dkt. No. 68, Ex. N at p. 11.  He also determined that plaintiff and his coworker were unqualified for the rigging work they were performing.  Id. at p. 15.

## II.    The Defendants

Carson, plaintiff's employer, is not a defendant in this action.[2]  Rather, plaintiff brings this negligence claim against two other companies that, he argues, were responsible for safety at the construction site.  Sec. Am. Compl. ¶¶ 8–12.

These defendants have a complex corporate relationship.  Both are owned by the same parent company, Tutor Perini Corporation.  Dkt. No. 66, Ex. J (Keating Building Corp. Supp. Responses to Pl.'s Interrogs., June 15, 2016) at 3.  This parent company acquired Keating Building Corporation in 2009.  Dkt. No. 68, Ex. C (Press Release, Jan. 15, 2009).  Keating Building Corporation then converted to a Delaware LLC and changed its name slightly, from "Corporation" to "Company."  Dkt. No. 68, Ex. C (Press Release); Ex. D (State of Delaware Certification of Conversion from a Corp. to a LLC, Dec. 24, 2009).  Defendant contends that Keating Building *Corporation*'s employees became Tutor Perini Building Corporation employees, but that Keating Building *Company* continues to exist and operate as a wholly owned subsidiary of Tutor Perini Corporation.  Keating Building Corp. Supp. Responses to Pl.'s Interrogs. at 3; Dkt. No. 66, Ex. E (Shaw Dep.) at 32:4–33:12, 67:16–68:25.

---

[2] Although not discussed in the briefs, presumably plaintiff did not bring a claim against Carson because, as his employer, it was subject to the Worker's Compensation Act, 77 Pa. Stat. Ann. § 1 *et seq.*

3

The parties dispute which defendant company—Tutor Perini Building Corporation or Keating Building Company—was involved in the Chestnut Street Tower project. On the one hand, only Tutor Perini Building Corporation had any contracts related to the project. The contract for the tower's construction is between the owner of the 31st Street property and Tutor Perini Building Corporation and, pursuant to that contract, the property owner paid Tutor Perini Building Corporation to be the construction manager. Dkt. No. 68, Ex. K (Constr. Mgmt. Servs. Agreement, Oct. 22, 2012) at 1; Shaw Dep. at 75:3–17; Dkt. No. 69, Ex. 2 (Vendor History Report, May 4, 2016) (summarizing vendor invoices related to the Chestnut Street Tower project). The contract with Carson for the concrete work is also with Tutor Perini Building Corporation. Dkt. No. 66, Exs. H-1 and H-2 (Subcontract between Tutor Perini Building Corp. and Carson Concrete Corporation, Jan. 11, 2013). Additionally, the people who managed the construction at the site saw themselves as Tutor Perini Building Corporation employees, even though they formerly worked for Keating Building Corporation. See Dkt. No. 66, Ex. F (Statler Dep.) at 17:7–12, Ex. M (Schellenberg Dep.) at 20:14–17, 21:13–20; Ex. N (Cooney Dep.) at 7:24–25; Ex. O (M. Hart Dep.) at 18:13–17. And after the purchase, Bradley Statler, formerly the president of Keating Building Corporation, began reporting to the Tutor Perini Building Corporation president. Statler Dep. at 15:9–19:24. In 2014, Craig Shaw, then Tutor Perini Building Corporation president, informed Statler his employment was terminated. Statler Dep. at 17:16–18:4.

On the other hand, there is evidence that Keating Building Company was involved in the project. First, Keating Building Company paid the people who worked on the site and sent their W-2s. Dkt. No. 68, Ex. H (2013 W-2 Earnings Summaries). Second, Bradley Statler, the Keating Building Corporation president turned Tutor Perini executive vice president, cosigned

the construction contract between Tutor Perini Building Corporation and the property owner using his former, Keating title.  See Constr. Mgmt. Servs. Agreement, Oct. 22, 2012 at 107; Statler Dep. at 16:15–19.  Third, Keating Building Corporation obtained building permits for the site.  Dkt. No. 68, Ex. J (Phila. Building Permits, Jan. 14, 2013 and July 26, 2013).  Finally, plaintiff points to a letter on Tutor Perini Building Corporation letterhead from Rachel Fisler, a contracts administrator at Tutor Perini Building Corporation, to Safway Services, a subcontractor performing work on the construction site, that advises Safway to "feel free to contact Keating Building Company's assigned Project Manager" if questions arise.  Dkt. No. 68, Ex. I (Letter from Fisler to Safway, Sept. 5, 2013).

      Deposition testimony from Shaw and Statler explains that the integration of former Keating Building Corporation employees into Tutor Perini Building Corporation took some time, that during this time Tutor Perini used Keating Company for payroll and that Bradley Statler signed the contract because the property owner was familiar with him and felt more comfortable working with him.  Statler Dep. at 92:23–93:11 (explaining that email was not initially transitioned to Tutor Perini Building Corporation systems); Shaw Dep. 50:4–13 (explaining that Tutor Perini Building Corporation was "processing paychecks to certain individuals working on that job through Keating's payroll system.  It just had not been converted to our own systems at that time"), Keating Building Corp.'s Supp. Responses to Pl.'s Interrogs. at 6 ("Keating Building Company is the appointed payroll agent for all of Philadelphia-based Tutor Perini Building Corp. payroll."); Shaw Dep. at 55:21–56:12 (same), 78:10–22 (explaining that Tutor Perini Building Corporation gave Statler the power of attorney so that he "had the authority to act on behalf of Tutor Perini Building Corp who is the party to the contract with tower.  So, they wanted that comfort level that Brad acting in that capacity had the authority and authorization to do that"),

83:2–15 (explaining that the property owner "felt very comfortable with Brad in that regard and would like to see his signature on here").

## III. Responsibility for Safety at the Site

Pursuant to the contract between Tutor Perini Building Corporation and the property owner, Tutor Perini Building Corporation assumed the responsibility "to conduct its operations so as to protect the health and safety of its employees, agents, Subcontractors and other persons on the Site . . ." in accordance with applicable law and customs. Dkt. No. 68, Ex. K (Chestnut Street Tower Constr. Mgmt. Servs. Agreement, Oct. 22, 2012) at p.71.

Tutor Perini Building Corporation required all subcontractor employees to complete an orientation that went over site-specific information, emergency and evacuation procedures, hospital locations and disciplinary procedures. M. Hart Dep. at 24:5–25:8, Dkt. No. 66, Exs. P-1–P-6 (Safety Orientation Slides). During these presentations, Tutor Perini Building Corporation instructed that a subcontractor should "coordinate with a TPBC representative prior to any crane arriving on site" and that the crane should be operated by competent people and have other safety procedures in place. Dkt. No. 66, Ex. P-6 at 6. Tutor Perini Building Corporation also conducted safety meetings for subcontractors' foremen and superintendents. M. Hart Dep. at 23:6–12, 90:8–91:12.

Three supervisors monitored safety at the construction at the site: John Schellenberg, the safety director, Jack Cooney, the general superintendent, and Michael Hart, the project's safety coordinator. Shaw Dep. at 70:15–71:10. John Schellenberg oversaw safety at multiple construction projects. Schellenberg Dep. at 13:1–5, 18:9. He ensured everyone at the company met safety training requirements. Schellenberg Dep. at 15:11–13. Jack Cooney had an office at the site and was frequently in the field, checking the work's quantity, quality and schedule.

Cooney Dep. at 15:7–15:25.  Michael Hart conducted new-hire safety orientations, safety meetings for subcontractors' foremen, pre-employment screening and daily site inspections. Hart Dep. at 22:23–30:11.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W.

7

Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

**I.     Tutor Perini Building Corporation Is Immune under the Workers' Compensation Act**

Defendant Tutor Perini Building Corporation is entitled to summary judgment because its showing that it has "statutory employer" immunity under the Workers' Compensation Act is not genuinely disputed by evidence in the record. 77 Pa. Stat. Ann. §§ 52, 462. The Workers' Compensation Act serves as the exclusive remedy for both common law employers and employers statutorily defined under the Act. 77 Pa. Stat. Ann. § 481(a). In order to enjoy this immunity as a statutory employer, a general contractor must:

(1) be under contract with an owner or one in the position of an owner;

(2) occupy or control the premises of such owner;

(3) enter into a subcontract with the plaintiff's employer; and

(4) entrust part of its regular business to such subcontractor.

(5) Additionally, the injured party must be an employee of such subcontractor.

See McDonald v. Levinson Steel Co., 153 A. 424, 426 (Pa. 1930). Plaintiff argues only that defendant Tutor Perini Building Corporation did not occupy or control the premises and so does not meet the second element. He contends that the supervisors on site were actually Keating employees, not Tutor Perini Building Corporation employees, and so Tutor Perini Building Corporation did not occupy or control the premises. See Kelly v. Thackray Crane Rental, Inc., 874 A.2d 649, 657 (Pa. Super. Ct. 2005) ("[A]n employer effectively occupied the premises

when its supervisor was present at the site on a daily basis and when its employees were regularly present on the premises at the same time as the subcontractor's employees."). But the evidence to which plaintiff points does not show that Keating Building Company controlled the supervisors. Given the substantial evidence establishing that Tutor Perini Building Corporation employed the supervisors, there is no genuine dispute on the record before me about the fact that Tutor Perini Building Corporation occupied and controlled the premises in satisfaction of the second element of McDonald.

The identity of a worker's employer is determined by which party had "the power and authority to direct and control" his actions. Barnes v. Alcoa, Inc., 145 A.3d 730, 735–36 (Pa. Super. Ct. 2016). This includes "the right to select the employe[e], the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done." Sweet v. Pa. Labor Relations Bd., 322 A.2d 362, 365 (Pa. 1974). In cases where an employee of one company is loaned to another to perform a specific job, the worker becomes the new company's employee when that company directs and controls his work. Ashman v. Sharon Steel Corp., 448 A.2d 1054, 1058 (Pa. Super. Ct. 1982) (discussing which company controlled a truck driver when one company leased his truck and driving services for work on its property from another company, and holding that "[t]he crucial test in determining whether a servant furnished by one person to another becomes the employe[e] of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it") (emphasis omitted).

Which company pays a worker is not determinative of which company is the worker's employer. See Sweet, 322 A.2d 362, 365 (Pa. 1974) ("The duty to pay an employe[e]'s salary is often coincident with the status of employer, but not solely determinative of that status.") citing

9

Rodgers v. Wash. Cnty. Inst. Dist., 37 A.2d 610, 611 (Pa. 1944); Ashman, 448 A.2d at 1058 ("Although opinions considering [the identity of the employer] frequently mention such items as which employer actually hired the servant, and which paid his wages, and which issued his W-2 Form, these are peripheral matters and are not controlling."); Martin Trucking Co. v. Workmen's Comp. Appeal Bd., 373 A.2d 1168, 1169-1170 (Pa. Commw. Ct. 1977) (finding defendant Martin to be the plaintiff's employer because "[t]he testimony establishes that, from the moment the lease agreement went into effect, Searfoss stepped into the background, functioning only as a conduit through which funds passed from Martin to [the plaintiff], and that instructions on day to day operations came directly from Martin"). On its own, evidence that a company paid the worker is insufficient to raise a genuine dispute of fact about whether the worker is that company's employee. Barnes, 145 A.3d at 735–36 ("[T]he mere fact that [the parent company's] name was on [the plaintiff's] paycheck was insufficient to raise a factual question for the jury" about whether the parent company was the plaintiff's actual employer); see also Rugh v. Keystone-Laurence Transfer & Storage Co., 179 A.2d 242, 244–45 (Pa. Super. Ct. 1962).

  Defendant presents substantial evidence that Tutor Perini Building Corporation had the power and authority to direct and control John Schellenberg, Jack Cooney and Michael Hart, the supervisors on the construction site. First, upper-level management described a shift in the command-chain after the acquisition in 2009. John Schellenberg, the safety director at Keating Building Corporation, explained that he became a Tutor Perini Building Corporation employee in 2009. Schellenberg Dep. at 20:14–17, 138:2–4. Similarly, Bradley Statler, formerly Keating Building Corporation's president, testified that after 2009 he reported to Tutor Perini Building Corporation CEO Craig Shaw. Statler Dep. at 15:9–19:24. Indeed, it is clear that Tutor Perini

Building Corporation had the power to discharge Statler because, in 2014, it did so. Statler Dep. at 17:16–18:4 (explaining that Craig Shaw informed Statler he was terminated). This is strong evidence of control for the purposes of employee status. See Sweet, 322 A.2d at 365.

The testimony of upper-level management is especially probative of the ultimate company for whom the supervisors worked because the relevant change in authority was due to a corporate acquisition. The employees here were not merely "loaned" to another company. See, e.g., Ashman, 448 A.2d at 1056–58. Rather, the relevant shift in authority was at a higher level. Plaintiff does not present any evidence to counter the testimony by the upper level management at the former Keating Building Corporation that they began reporting to Tutor Perini Building Corporation in 2009 and continued to do so during the Chestnut Street Tower project.

Second, evidence that the supervisors perceived Tutor Perini Building Corporation to be their employer supports defendants' contention. All three supervisors testified that they saw themselves as employees of Tutor Perini Building Corporation. See Statler Dep. at 17:7–12, Schellenberg Dep. at 20:14–17, 138:2–4; Cooney Dep. at 7:24–25; M. Hart Dep. at 18:13–17. Additionally, Tutor Perini Building Corporation CEO Craig Shaw testified that the supervisors were working on behalf of Tutor Perini Building Corporation. Shaw Dep. at 12:14–15, 67:7–68:4.

Third, the contractual obligations suggest that Tutor Perini Building Corporation controlled the work. Tutor Perini Building Corporation undertook, by contract, to construct the building on the site, see Dkt. No. 68, Ex. K (Constr. Mgmt. Servs. Agreement, Oct. 22, 2012), and then agreed with Carson to monitor the site's safety and conduct safety trainings of Carson's foremen. Dkt. No. 66, Exs. H-1 and H-2 (Subcontract between Tutor Perini Building Corp. and Carson Concrete Corp., Jan. 11, 2013). The supervisors then performed the activities described

in the contracts. See Hart Dep. at 22:23–30:11; Cooney Dep. at 15:7–15:25; Schellenberg Dep. at 13:1–5, 18:9, 15:11–13. Plaintiff has produced no contract showing that Keating Building Corporation assumed these responsibilities. This evidence supports a finding that Tutor Perini Building Corporation had "the right to direct both the work to be done and the manner in which such work shall be done." Sweet, 322 A.2d at 365. Thus, defendant has presented substantial evidence that Tutor Perini Building Corporation controlled and directed, and therefore employed, the supervisors at the site.

The evidence identified by plaintiff does not raise a genuine dispute about which company employed the supervisors. Under Barnes and related cases, the fact that Keating Building Company paid the supervisors and issued their W-2s is not sufficient evidence on its own to raise a genuine dispute that Keating Building Company employed them. Dkt. No. 68, Ex. H (2013 W-2 Earnings Summaries). Nor does the other evidence plaintiff identifies show that Keating Building Company controlled their work: plaintiff points to Statler's signing the construction contract, but, according to its terms, Keating Building Corporation was not a party to the contract. Additionally, plaintiff highlights the building permits obtained by Keating Building Corporation[3] and a letter referring to the "Keating Building Company's assigned Project Manager," but these are not probative of who directed or controlled the supervisors. Dkt.

---

[3] Plaintiff may emphasize the building permits to show that Keating Building Company controlled the premises under the second McDonald factor requiring control or occupancy. A showing of control could support a finding that Keating Building Company met the second McDonald factor, regardless of who employed the supervisors. But this argument does not help plaintiff survive summary judgment. In this case, plaintiff must show not that Keating Building Company may have controlled the premises, but that Tutor Perini Building Corporation did not. See Kelly, 874 A.2d at 656 ("An employer's occupancy or control . . . need not be exclusive."). Thus, this evidence does not undermine the crucial finding that, because it employed the supervisors, Tutor Perini Building Corporation occupied the premises in satisfaction of the second McDonald factor.

No. 68, Ex. J (Phila. Building Permits, Jan. 14, 2013 and July 26, 2013); Dkt. No. 68, Ex. I (Letter from Fisler to Safway, Sept. 5, 2013).  Thus, these pieces of evidence do not create a genuine dispute about who employed the supervisors.

Because there is no genuine dispute on the record before me that Tutor Perini Building Corporation directed and controlled the supervisors on site, defendants have shown that Tutor Perini Corporation was the supervisors' employer and thus occupied and controlled the premises under the second McDonald factor.  Therefore, Tutor Perini Building Corporation has satisfied all five McDonald factors and is entitled to immunity as a statutory employer under the Workers' Compensation Act.  I will accordingly grant summary judgment in Tutor Perini Building Corporation's favor.

## II.     Defendant Keating Building Company Owed No Duty

Unlike defendant Tutor Perini Building Corporation, defendant Keating Building Company is not entitled to statutory employer immunity under the Workers' Compensation Act because Keating Building Company did not contract with the property owner or the subcontractor under the first and third McDonald requirements, among other reasons. McDonald, 153 A. at 426.  However, I will grant summary judgment in Keating Building Company's favor because plaintiff has not established that Keating Building Company owed him a duty of care.

A plaintiff claiming negligence must show that defendant owed him a duty of care. Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1272 (Pa. 2006); Beil v. Telesis Constr., Inc., 11 A.3d 456, 467 (Pa. 2011) ("When . . . the evidence fails to establish [grounds for a legal duty], the determination of liability may be made as a matter of law.").  Plaintiff cites Farabaugh for the rule that a construction manager owes subcontractors working on the site a duty of care when it

assumes the "responsibility to inspect and supervise the safety of procedures on the work site." 911 A.2d at 1281.  The Farabaugh court held that the law "allow[s] owners and construction managers to define their roles and responsibilities in each contract according to the needs of each project" and held that, because the contract between the construction manager and the site owner imposed an obligation on the construction manager to assume safety obligations, it triggered a duty to the subcontractor.  Id. at 1282–83.

Plaintiff does not present any evidence that Keating Building Company assumed the responsibility to supervise safety at the work site.  First, unlike in Farabaugh, there is no contract here imposing such responsibility.  Second, even if responsibility for site safety could be assumed by performance, as plaintiff argues, plaintiff does not provide sufficient evidence that Keating Building Company performed safety oversight.  Plaintiff's evidence consists of the same facts, discussed above, that he argues show that the supervisors working at the site were Keating Building Company employees.  As explained in Part I, there is insufficient evidence for a reasonable jury to find in plaintiff's favor on this argument.  Thus, the presence of the supervisors does not show that Keating Building Company assumed responsibility for safety at the site.  The other evidence plaintiff provides—that Statler cosigned the contract, Keating Building Company obtained the permits for the site, and a Tutor Perini Building Corporation referenced Keating's "project manager,"—is also insufficient to show that Keating Building Company assumed responsibility for safety at the site, as none of this evidence relates to safety oversight.  Therefore, there is insufficient evidence that Keating Building Company owed plaintiff a duty.  I will grant summary judgment in Keating Building Company's favor.